# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Case No.: 1:20-CR-00306-DCN-1 |
| | : | |
| Plaintiff, | : | **JUDGE DONALD C. NUGENT** |
| | : | |
| vs. | : | **SENTENCING MEMORANDUM** |
| | : | **AND MOTION TO CONSOLIDATE** |
| **JESUS BEY**, | : | **SUPERVISED RELEASE VIOLATION** |
| | : | **WITH SENTENCE IMPOSED HEREIN** |
| Defendant. | : | |

Now comes the Defendant, **JESUS BEY**, by and through his undersigned counsel, and respectfully submits for the Court's consideration, relevant the sentencing hearing scheduled for July 14, 2022 at 10:00 a.m., the following Sentencing Memorandum which requests that Defendant's supervised release violation be consolidated with the sentence imposed in the herein matter.

A memorandum of law setting forth the facts and legal authorities in support of Defendant's request to consolidate Defendant's supervised release violation with the sentence imposed herein is set forth below and incorporated herein, as if fully rewritten.

Respectfully submitted,

/s/ - *Angelo F. Lonardo, Esq.*
**YELSKY & LONARDO, LLC.**
BY:  **ANGELO F. LONARDO, ESQ.**
Ohio Reg. No. 0032274
323 Lakeside Avenue, West, Suite 450
Cleveland, Ohio  44113
(216) 781-2550 – Telephone
(216) 781-6242 – Facsimile
aflonardo@yelskylonardo.com – Email

/s/ - *Mitchell J. Yelsky, Esq.*
**YELSKY & LONARDO, LLC.**
BY:  **MITCHELL J. YELSKY, ESQ.**
Ohio Reg. No. 0039295
323 Lakeside Avenue, West, Suite 450
Cleveland, Ohio  44113
(216) 781-2550 – Telephone
(216) 781-6242 – Facsimile
mjy@yelskylonardo.com – Email

Counsel for **JESUS BEY**

# MEMORANDUM IN SUPPORT

## I. FACTS:

### A. Facts Regarding Offense for Which Defendant Was On Supervised Release

On January 11, 2020, the Defendant was on supervised release, after serving a 28-month sentence for being a felon in possession of a firearm. This offense arose from an incident occurring on January 25, 2017.

The Defendant had attended the funeral of a long-time family friend, Yvonne D. Jackson; and, following the funeral attended a repass at Harvard Wine & Grill to celebrate her life. Defendant's mother Robbie Cayson and friend, Catrina Gaston, also attended the repass and were told before entering that "a carload of men were looking to kill Jesus."

Ms. Gaston, at the time, was gainfully employed as a nurse's aid and had no criminal record. She had obtained a firearm and a license permit to carry a concealed weapon.

Defendant's mother and Ms. Gaston told the Defendant about the "death threat" related to them concerning the Defendant. Prior to leaving the repass, Defendant asked Ms. Gaston for her handgun, for security purposes.

As the Defendant was walking his mother and Ms. Gaston to their vehicle, a carload of individuals fired multiple gunshots at Defendant. The Defendant proceeded behind a truck and attempted to fire Ms. Gaston's firearm in self-defense, but the gun jammed.[1]

---

[1] The aforestated facts were recorded on a video surveillance camera maintained by the Harvard Wine & Grill which held the repass for Ms. Jackson.

These facts were related in *United States v. Bey*, Case No. 1:17CR365, in a jury trial before Judge Dan Aaron Polster and the video of the incident was admitted as an exhibit at the trial.

On November 11, 2018, the Defendant was found guilty and sentenced to 78 months with 3 years supervised release.  On August 21, 2019, the Defendant's sentence was reduced to 28 months with 3 years supervised release, based upon a revision of the law, on January 3, 2019, in *United States v. Burris*, 912 F.3d 386 (6th Cir. 2019) that ruled Ohio's felonious assault and aggravated assault offenses were too broad to categorically qualify as violent felony predicates, as applied for sentencing enhancement under the guidelines.

### B. The Defendant's Present Offense For Constructive Possession Of A Firearm And Supervised Release Violation

On January 10, 2020, the Defendant was out with his cousin and blood relative, Bryant Cayson.  It had been sometime since the Defendant had seen his cousin, as both had recently been incarcerated.

During the course of the evening, the Defendant had physical contact numerous times with his cousin, Bryant Cayson, shaking hands, embracing one another, passing drinks, sharing the same table at different clubs.

During the early morning hours of January 11, 2020, the Defendant was driving his cousin, Bryant Cayson, home.  Mr. Cayson was seated as a front seat passenger. An undercover Cleveland Police vehicle noticed the vehicle Defendant was driving commit several driving infractions and stopped the vehicle on West Sixth Street, in downtown Cleveland, Ohio.  At the time of the stop, Mr. Cayson was observed attempting to conceal something.

The officers noted the Defendant was driving under suspension and had both individuals exit the vehicle while a tow was called for the vehicle.

While executing an inventory search of the vehicle, police discovered a Glock 26 9 mm handgun under the floor mat of the passenger seat where Mr. Cayson was sitting.

Both the Defendant and Mr. Cayson were detained in the rear of a Cleveland Police vehicle which contained an audio recorder. Mr. Cayson unequivocally acknowledged ownership and control of the firearm during the audio recording. At 4:40, Mr. Cayson states, "it is my gun." Mr. Cayson repeats at 4:46 of the audio recording, "it is my gun."

Mr. Cayson subsequently related to the officers at the scene, "He ain't got nothing to do with that . . . that's mine." "I ain't going to lie to you . . . It's on my side of the car. Print it." "That sh*t belong to me." when questioned by the officers. Mr. Cayson also identified the make and model of the firearm found underneath the floor mat where he was sitting as a passenger, as a Glock 26, 9 mm.

Mr. Cayson alone was arrested and charged with Carrying a Concealed Weapon (ORC §2923.12); Improper Handling of a Firearm in a Motor vehicle (ORC §2923.16) and Having a Weapon Under Disability (ORC §2923.13) (*see*: Probable Cause Affidavit to arrest Mr. Cayson, attached as Exhibit "A").

The Defendant was released without criminal charges and cited for traffic violations. Driving under Suspension (435.07) Change of Course (431.14) and Passing on Right (431.04).

**C.  Defendant Bey Arrested And Held Without Bond On "Constructive Possession" Of Firearm As Violation Of Supervised Release In Case No.: 1:17CR364; Violation Hearing Stayed As A Result Of COVID-19 Pandemic**

On January 16, 2020, the Defendant was arrested for violating the conditions of his supervised release in Case No. 1:17CR364 (*see*: ECF 92, Violation Report and Warrant Request, Court Only)[2].

The Defendant was taken into custody and held without bond. A violation hearing was timely scheduled for January 21, 2020. At the time, the country was in a lockdown due to the COVID-19 pandemic; and, the supervised release violation hearing was continued for 60 days. Defendant's motion for bond pending a supervised release violation hearing on Case No.: 1:17CR00364 was denied.

On March 25, 2020, the supervised release violation hearing in Case No.: 1:17CR364 was again postponed due to the COVID-19 Pandemic. On June 22, 2020, a supervised release violation hearing was again postponed due to the COVID-19 pandemic; and, to determine if a new law indictment would be returned.

The COVID-19 pandemic also resulted in Defendant being incarcerated at NEOCC in Youngstown, Ohio, pending his supervised release violation hearing under extremely harsh and restrictive conditions. For a period of sixteen months, Defendant was held in isolation, with no access to the yard, no access to other prisoners, no visitation and no counseling or bible studies or other group activities. It was very much akin to being held in solitary confinement without any privileges through no fault of the Defendant. Overcrowding at the NEOCC facility also lead to numerous and violent fights among inmates.

---

[2] The Violation Report was incorrectly dated 1-14-19, but clearly refers to the Defendant's incident occurring on January 11, 2020, resulting in the arrest of Mr. Cayson.

5

During the interim, the Defendant was made to submit to DNA testing and it was determined that the DNA of four individuals was found on the weapon seized from Mr. Cayson, including the DNA of the Defendant and Mr. Cayson.

On June 11, 2020, the Defendant was named in a one-count Indictment in the herein cause, along with Mr. Cayson and charged with being a Felon in Possession of a Firearm.

The Defendant was still adamant that he did not possess the firearm which Mr. Cayson had previously acknowledged as belonging to him alone.

The Defendant retained the services of Dr. Julie A. Heinig, Ph.D., an expert in DNA forensics. The report acknowledged that a mixed DNA profile consisting of four contributors was obtained from swabs of the Glock 26 9 mm, two of which were a match to the Defendant and Mr. Cayson. The expert findings of Dr. Heinig also noted that it is not known when the DNA was deposited by each of the four contributors. It was not known how the DNA was deposited on the firearm, it could have been directly deposited by handling the firearm and could have been indirectly transferred, where a contributor did not have direct contact with the firearm but was transferred via an intermediary, where a person shakes hands with another individual transferring his DNA to that individual and the individual then transfers the person's DNA to a handgun handled by the individual (*see*: Expert Report prepared by Dr. Heinig, attached as Exhibit "B").

**D.  Decision To enter Change Of Plea And Incorporate
     Supervised Release Violation At Time of Sentencing**

On March 25, 2022, after 27 months of incarceration without bond, under extremely difficult, harsh and restrictive conditions due to the COVID-19 pandemic, the Defendant entered a written plea agreement with the government.

6

Under the terms and conditions of the March 25, 2022 plea agreement, the Defendant agreed to plead guilty to Constructive Possession of a Firearm and/or Ammunition by a Convicted Felon, in violation of 18 USC §922(g)(1).

It was expressly stated in the plea agreement, "The parties have no agreement about the sentence in the supervised release violation (Case No. 1:17CR364) and leave that to the discretion of the Court." (March 25, 2022 plea agreement, pg. 3, par. 7). Sentencing is scheduled for July 14, 2022.

In Defendant's final presentence investigation report (PSR), dated June 29, 2022, the United States Pretrial Services and Probation Officer incorrectly stated that Defendant had been detained since June 29, 2020. The Defendant has in fact been detained and incarcerated since the date of his arrest, on January 16, 2020, on the supervised release violation notice which referenced constructive possession by a felon of a firearm and association with a felon (Defendant's blood relative and cousin) as the basis for the violation (Exhibit "B").[3]

The June 29, 2022 PSR for Defendant also noted the Base Offense Level, under the United States Sentencing Guidelines (USSG), for conviction of being a Felon in Constructive Possession of a Firearm and Ammunition (18 USC §9229[g][1]) was a Base Offense Level 14 (June 29, 2022 PSR pg. 4, par. 13). The only applicable adjustment was a two point downward adjustment for Acceptance of Responsibility, resulting in a Total Offense Level of 12 (PSR, pg. 5, par. 20-21).

---

[3] The Defendant's new law violation, driving under suspension; and, an October 19, 2019 Illicit substance use were non-factors. The driving under suspension was a traffic violation; and, the Defendant has never been a user of illicit substances. Defendant adequately explained his mistaken and unintentional consumption of the illicit substance in a drink shared with another in 2019; and, no action was taken.

7

The Defendant's June 29, 2022 PSR also found Defendant's prior criminal convictions resulted in a Subtotal Criminal History score of 10. The PSR also found Defendant committed the instant offense while on supervised release (Case No.: 1:17CR364) resulting in an upward addition of two points, under USSG §4A1(d). It was also duly noted that a Criminal History Score of 12 establishes a Criminal History Category of V, for a Total Offense Level of 12 and a Criminal History Category of V (27-33 months) (June 29, 2022 PSR, pg. 12, par. 57).

In Defendant's final PSR, Defendant's United States Pretrial and Probation Officer noted during the last five fiscal years (FY 2017-2021), there were 651 offenders whose primary guideline, like Defendant, was 2K2.1, with a Final Offense Level of 12 and a Criminal History Category of V; and, after excluding offenders who received a §5K1.1 substantial assistance departure, the 636 offenders (98%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 27 months and the median length of imprisonment imposed was 27 months (June 29, 2022 PSR, pgs. 16-17, par. 82).

At the time of sentencing, on July 14, 2022, Defendant will have been imprisoned, under extremely harsh COVID-19 restrictions, for the supervised release violation notice (1:17CR364), and the offensive conduct charged herein, for a period of 31 months.

**II.    LAW:**

Defendant respectfully submits that the offense to which Defendant pled guilty is incorporated as the primary basis for Defendant's supervised release violation notice; and, Defendant has been incarcerated, without bond, since January 16, 2020, in the most restrictive conditions due to the COVID-19 pandemic (*see*: Exhibit "B", attached).

8

When a defendant is subject to an undischarged sentence, such as a supervised release violation arising from a prior case, the court has discretion to impose a sentence for the current offense that runs concurrently with or consecutive to the prior undischarged sentence.  18 USC §3584(a); *see also*:  *United States v. Maxie*, 647 Fed. Appx. 551, 2016 U.S. App. LEXIS 8376 (6th Cir. 2016).

The District Court's exercise of this authority is predicated on the Court's consideration of the factors listed in 18 USC §3553(a), in reaching a combined sentence "sufficient but not grater than necessary" in reaching the objectives set forth by the statute.  *United States v. Maxie*, *supra*, headnote #1.  The sentencing court is also directed to consider any applicable Sentencing Guidelines or policy statements.  *Id*.

One such policy statement is set forth in USSG §5G1.3(d) which provides that the sentence in the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable sentence for the instant offense.  *Id*.

18 USC §3553(a)(6) concerns national disparities between defendants with similar criminal histories convicted of similar criminal conduct, not disparities between co-defendants.  The only disparity relevant are those among federal defendants on a national scale.  *See*:  *United States v. Bass*, 17 F.4th 629, 2021 U.S. App. LEXIS 32738 (6th Cir. 2021).

**III.    ARGUMENT:**

Defendant is 29 years of age and single.  The Defendant hopes to obtain permission, upon release, to join his significant other, Sharice Jackson, and their two children, Legend Bey (age 5) and Bella Bey (age 2) in Atlanta, Georgia.  Ms. Jackson is

9

a nurse and taking college courses to obtain a BSN. (*See*: letter from Ms. Jackson, attached as Exhibit "C").

The Defendant also hopes to be reunited, upon his release, with his longtime family friend, Randall Coleman, if given permission to move permanently to Atlanta, Georgia. Mr. Coleman owns a successful logistics company in Atlanta, Georgia, called "Mr. Big Stuff Transport, MBST LLC". Mr. Coleman has proven to be a leader among men. In addition to establishing a successful business, he is a proud father of three children, and has guided and supported them, in the most positive way, throughout their life. His eldest will be graduating this December, 2022, from Howard University with a double major in Finance and Law. His teenage twins attend the prestigious private school, Woodward Academy, in College Park, Georgia.

Mr. Coleman has pledged to place the Defendant in truck driving school, at his own cost; and, upon completion, to provide Defendant with employment as a CDL Class A driver with his company (*see*: letter from Mr. Coleman, attached as Exhibit "C").

The Defendant hopes to earn enough money from his employment from Mr. Coleman to support his family and four other children, Peyton Owens, age 8, Jada and Jace Bey, age 7 and Kayden Cleveland, age 5 (PSR, pg. 11, par. 46).

The Defendant was raised in a rough neighborhood, where drugs and violence were ever present. The Defendant had to fight just to keep his clothes and shoes. Defendant excelled in school and earned an academic scholarship to Central State university. Being away from family and the neighborhood he grew up in was difficult. Defendant returned home after his first year in college and did not return. Defendant considers this to be the biggest regret in his life.

The Defendant prays for the opportunity to begin a fresh start in another city, where no one knows his name.  To work hard, live right and earn the respect of his family and the community.

## IV. CONCLUSION:

For all of the aforecited facts and authorities of law, the Defendant, Jesus Bey, by and through his undersigned counsel, respectfully requests this Honorable Court for the imposition of a reasonable sentence to be served concurrent with his supervised release violation arising from the same criminal offense charged in the Indictment.

Respectfully submitted,

| | |
|---|---|
| */s/ - Angelo F. Lonardo, Esq.* | */s/ - Mitchell J. Yelsky, Esq.* |
| **YELSKY & LONARDO, LLC.** | **YELSKY & LONARDO, LLC.** |
| BY:  ANGELO F. LONARDO, ESQ. | BY:  MITCHELL J. YELSKY, ESQ. |
| Ohio Reg. No. 0032274 | Ohio Reg. No. 0039295 |
| 323 Lakeside Avenue, West, Suite 450 | 323 Lakeside Avenue, West, Suite 450 |
| Cleveland, Ohio  44113 | Cleveland, Ohio  44113 |
| (216) 781-2550 – Telephone | (216) 781-2550 – Telephone |
| (216) 781-6242 – Facsimile | (216) 781-6242 – Facsimile |
| aflonardo@yelskylonardo.com – Email | mjy@yelskylonardo.com – Email |

Counsel for **JESUS BEY**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 8TH day of July, 2022, a copy of the following was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ - Angelo F. Lonardo, Esq.*
**ANGELO F. LONARDO, ESQ.**